IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*
FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 AUG 18 P 1:47

CLERK'S OFFICE
AT GREENBELT

BY_____ DEPUTY

| | | |
|---|---|---|
| **ESTATE OF KENDALL ARNAZ GREEN,** *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: GJH-16-2896 |
| **MATTHEW PINKERTON,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Estate of Kendall Arnaz Green brings this wrongful death and survival action against Defendant Sergeant Matthew Pinkerton for the fatal shooting of Green by Pinkerton on September 15, 2013. The action was originally filed in the Circuit Court for Prince George's County, and Defendant removed the action to this Court, invoking the Court's diversity jurisdiction.[1] Presently pending before the Court is Defendant's Motion to Stay, ECF No. 20, and Defendant's Motion for Summary Judgment, ECF No. 26. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion for Summary Judgment is granted, and the Motion to Stay is denied as moot.

---

[1] The decedent, at all times relevant to the action, was a resident of the state of Maryland. ECF No. 1 ¶ 4. *See Allstate Ins. Co. v. Cherry*, No. CIV.A. ELH-11-2898, 2012 WL 1425158, at *4 (D. Md. Apr. 23, 2012) ("a decedent's estate must be sued through the estate's personal representative, who is statutorily 'deemed to be a citizen only of the same State as the decedent.'") (citing 28 U.S.C. § 1332(c)(2)). Defendant Pinkerton was, at the time the action was filed, and at all times thereafter, a resident of the state of Florida. *Id.* ¶ 5; ECF No. 10 ¶¶ 4–5; *see Rowland v. Patterson*, 852 F.2d 108, 112 (4th Cir. 1988) (noting that diversity of citizenship is determined when the complaint is filed). Plaintiff seeks damages in excess of $75,000. Therefore, diversity jurisdiction over this action is proper. *See* 28 U.S.C. § 1332.

## I.  BACKGROUND[2]

Kendall Arnaz Green, an acquaintance of the Pinkertons, was engaged in an extramarital relationship with Jessica Pinkerton, Matthew Pinkerton's wife. *See* ECF No. 26-1 ¶¶ 1–10; *see also* ECF No. 2 ¶ 5. During the relationship and their interactions together, Green was violent towards Jessica, striking, throwing, and pushing her. ECF No. 26-1 ¶¶ 102–106. Jessica also learned about Green's violent tendencies in other respects — that Green became violent when he drank, that he had previously assaulted his father, that Green's mother had kicked him out of her home because of his aggressive behavior, and that Green had boasted about other people he had assaulted. *See id.* ¶¶ 11–18, 107–110. Green allegedly stood at a height of six feet, six inches tall. *See* ECF No. 26 at 5.[3]

In the early morning hours of September 15, 2013, Green was texting Jessica on her cell phone. *See* ECF No. 26-1 ¶¶ 33–40. Green was intoxicated. *Id.* ¶ 19. At 1:23 a.m., Green texted Jessica, "Ill be at your house waiting." *Id.* ¶ 40. Jessica responded, "no" and "don't so [sic] that." *Id.* ¶¶ 40–43. Green continued to text Jessica, stating, "Pick up da phone," and "Ok you not going to pick up." *Id.* ¶¶ 46–49. Jessica did not respond to Green's messages. At 1:48 a.m., Green then stated, "if you pick up I wont go the door if you don't I'm doing more [than] knocking." *Id.* ¶¶ 51–53. Shortly thereafter, Green came to the Pinkerton house at 424 Arbor Drive, Glen Burnie, Maryland. *Id.* ¶¶ 19–21, 26–66. No one had invited Green to come to the house. *Id.* ¶ 67.

---

[2] On or about March 2, 2017, Defendant served upon Plaintiffs written Requests for Admission of Fact. *See* ECF No. 26-1. Pursuant to Fed. R. Civ. P. 36, each matter of which an admission is requested is deemed to be admitted unless, within 30 days after service of the request, the receiving party serves upon the requesting party a written answer or objection addressed to the matter. Fed. R. Civ. P. 36(a)(3). In this case, Plaintiffs did not serve Defendant with an answer or objection; thus, each request for admission is deemed admitted. Accordingly, the facts stated herein are taken from the Requests for Admission, unless otherwise noted.

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2

When Green arrived at the house, he spoke briefly with Matthew Pinkerton. ECF No. 26-1 ¶ 120. Pinkerton shut the door with Green still outside the house, and did not reopen the door for Green. *Id.* ¶ 120–121. Green then forced his way into the house, cracking the front door as a result. *Id.* ¶¶ 127–131. One or more persons inside the house repeatedly directed Green to leave. *Id.* ¶¶ 68–72. Once inside the house, Green began cursing at Matthew Pinkerton, acting aggressively, and using racial slurs towards Pinkerton. *Id.* ¶¶ 80–84. Green started to approach Pinkerton. *Id.* ¶ 85. Pinkerton told Green to stop. *Id.* ¶¶ 85–87. Green continued to approach Pinkerton, allegedly even after Pinkerton brandished a handgun in front of Green. *See* ECF No. 2 ¶¶ 8–9. In fact, Plaintiff alleges that Green told Pinkerton he "did not have it in him" to shoot Green. *See id.* ¶ 9. Pinkerton backed away from Green, and continued to back away as Green approached Pinkerton. ECF No. 26-1 ¶¶ 88–90. Pinkerton then shot Green twice in the chest with the handgun, fatally wounding Green. *Id.* ¶¶ 91–95. Both shots were fired from within the home, and Green's blood and shell casings were found inside the home. *Id.* ¶¶ 92–99. After being shot, Green staggered onto the porch. *Id.* ¶ 100. Matthew Pinkerton called 911 immediately after the shooting. *Id.* ¶¶ 112–113. Green was pronounced dead on the scene. *See id.* ¶¶ 115–118.

The State of Maryland pursued criminal charges against Matthew Pinkerton in October of 2013. *See* ECF Nos. 26-2–26-3; *State v. Pinkerton*, 02-K-13-1930 (Cir. Ct. Anne Arundel Cty.). A jury trial was held. *See id.* At the conclusion of the State's case, Judge Mulford of the Circuit Court for Anne Arundel County granted Defendant's Motion for Judgment of Acquittal, acquitting Pinkerton of all charges. *See* ECF No. 26-1 ¶ 138; ECF No. 26-3 at 7.

Green's estate, by and through Green's mother, Felicia Letitia Carroll, filed this Complaint in the Circuit Court for Prince George's County. Defendant removed the action to this

Court on August 17, 2016. Plaintiff brings a survival action and wrongful death action, alleging claims of negligence and battery. *See* Md. Code, Cts. & Jud. Proc. § 3–902; Md. Code, Est. & Trusts § 7–401(y). Plaintiff seeks damages in excess of $2 million dollars.

On December 22, 2016, Defendant moved for a stay of proceedings because Pinkerton was to be deployed for military service on or about January 9, 2017, and then "for a period of no less than 6 months." ECF No. 20 ¶¶ 4–5. Plaintiffs opposed the Motion to Stay. ECF No. 21. On March 17, 2017, counsel for Defendant indicated that "Sergeant Pinkerton's present deployment is scheduled to conclude, subject to change in July of 2017." ECF No. 25 at 1. The Court has received no further information regarding Pinkerton's availability. In this status report, counsel for Defendant also indicated that he had propounded written discovery to the Plaintiffs, which had not been returned. *Id.* Defendant filed his Motion for Summary Judgment on April 17, 2017. ECF No. 26. Plaintiffs have not responded to the Motion, and the time for doing so has passed. On June 23, 2017, the Court issued a paperless Order, stating that while the Motion for Summary Judgment was ripe for resolution, because Plaintiffs may have incorrectly believed the case had been stayed, the Court would allow the Plaintiffs an additional seven days to respond to the dispositive motion. ECF No. 27. To date, Plaintiffs have not done so. Now, more than forty five days have elapsed, and the Court is ready to render its Decision. Upon consideration of the uncontroverted facts set forth in Defendant's Motion for Summary Judgment, and related authorities, the Motion is now granted. The Motion to Stay is denied as moot.

## II. STANDARD OF REVIEW

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In undertaking this inquiry, the Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). But this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993).

The burden is on the moving party to show "that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof." *Benton v. Prince George's Cmty. Coll.*, No. CIV.A. DKC 12-1577, 2013 WL 4501324, at *3 (D. Md. Aug. 21, 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). Thus, upon a motion for summary judgment, the opposing party "may not rest upon . . . mere allegations or denials," but rather, "must set forth specific facts showing that there is a genuine issue for trial. If the [opposing] party does not so respond, summary judgment, if appropriate, shall be entered against the [opposing] party." *Tyler v. Prince George's Cty., Maryland*, 16 F. App'x 191, 192 (4th Cir. 2001) (citing Fed. R. Civ. P. 56(e)).

Of note, however, if the nonmoving party does not respond to the summary judgment motion, the failure to respond, in and of itself, "does not fulfill the burdens imposed on moving parties by Rule 56. Section (c) of Rule 56 requires that the moving party establish, in addition to the absence of a dispute over any material fact, that it is 'entitled to a judgment as a matter of law.'" *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (citing Fed. R. Civ. P. 56(c)). Although the nonmoving party's failure to respond "may leave uncontroverted those facts

5

established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Id.* Thus, the Court must review a summary judgment motion, "even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment . . ." *Id.*[4]

### III. ANALYSIS

In this wrongful death action, the Court applies the law of Maryland, where the alleged homicide occurred. *See Kielar v. Granite Const. Co.*, 647 F. Supp. 2d 524, 526 (D. Md. 2009) ("Maryland generally follows the principle of *lex loci delicti,* which applies the law of the state where the injury occurred"). Maryland's wrongful death statute provides that "[a]n action may be maintained against a person whose wrongful act causes the death of another." Md. Code, Cts. & Jud. Proc. § 3-902(a).[5] Under the common law, "[o]rdinarily a person who is attacked is required to retreat if the means of doing so are within his power and consistent with his safety." *Gainer v. State*, 40 Md. App. 382, 386 (1978); *see also Barton v. State*, 46 Md. App. 616, 618 (1980). However, with respect to this "so-called 'retreat rule,' a universally recognized exception exists: there is no duty to retreat if one is attacked in his own home, if in other respects he brings

---

[4] As an initial matter, Defendant argues that Pinkerton's acquittal in the state court criminal case collaterally estops liability in this civil action. However, the Maryland Court of Appeals has explicitly declined "to apply collateral estoppel in civil proceedings following acquittals on criminal charges" *In re Neil C.*, 308 Md. 591, 596 (1987). This is in part because "the lower burden of proof in the subsequent civil proceeding [as opposed to the burden of proof in a criminal case] preclude[s] the application of collateral estoppel. *Id.* (citations omitted). Therefore, Plaintiffs' wrongful death action is not barred by collateral estoppel.

[5] In a survival action, Maryland law provides that "[a] personal representative may prosecute, defend, or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have commenced or prosecuted." Md. Code, Est. & Trusts § 7-401. "Under Maryland law, claims for survival and wrongful death, although both arising upon a person's death, differ importantly. In a survival action, claims are prosecuted for the benefit of the estate, and the measure of damages is the harm to the decedent. A wrongful death claim is for the benefit of the spouse, parent, or child and includes damages for pecuniary loss and emotional harm to the survivors arising out of the loss of a family member." *Starr v. United States*, 262 F. Supp. 2d 605, 607 (D. Md. 2003) (citations omitted). These differences are, however, irrelevant to this Court's resolution of the dispositive motion in this case, as the crux of the dispute is the wrongfulness or justifiability of the killing.

himself within the ordinary rules of self-defense." *Gainer*, 40 Md. App. at 368. This exception is premised on the idea that "a man's home is his castle, indeed his ultimate sanctuary . . ." *Id.* at 388.

As Maryland courts have recognized, "[i]f the peril-the attack-occurs in [the defendant's] home, his dwelling place, he need not retreat from it, but may stand his ground and use whatever force is reasonable (including, if necessary, fatal force) in order to repel the attack and defend himself." *Barton v. State*, 46 Md. App. at 618 (1980); *see also Crawford v. State*, 231 Md. 354, 361 (1963) (agreeing that "a man faced with the danger of an attack upon his dwelling need not retreat from his home to escape the danger, but instead may stand his ground and, if necessary to repel the attack, may kill the attacker."); *Gainer*, 40 Md. App. at 390 (adopting reasoning that "[i]t is not now and never has been the law that a man assailed in his own dwelling is bound to retreat. If assailed there, he may stand his ground and resist the attack. He is under no duty to take to the fields and the highways, a fugitive from his own home. . .).

To be sure, this right is not absolute, and "[t]he permissible degree of force used to repel an intruder must not be excessive." *Law v. State*, 21 Md. App. 13, 31 (1974) (noting that "we do not find the right to defend one's habitation to be so absolute as to sanction promiscuous shooting upon a baseless apprehension by an unreasonable person."); *see also Gainer v. State*, 40 Md. App. 382, 388 n.5 (1978) ("One of the most important elements is that the force used not be excessive."). Maryland courts, and most American jurisdictions have further clarified:

> [I]f an assault on a dwelling and an attempted forcible entry are made under circumstances which would create a reasonable apprehension that it is the design of the assailant to commit a felony or to inflict on the inhabitants injury which may result in loss of life or great bodily harm, and that the danger that the design will be carried into effect is imminent, a lawful occupant of the dwelling may prevent the entry even by the taking of the intruder's life.

7

*Law*, 21 Md. App. at 27 (citing *Crawford*, 231 Md. at 360).

In Pinkerton's case, the facts, uncontroverted in this unopposed motion for summary judgment, demonstrate that Pinkerton was acting in reasonable defense of his own home. In the middle of the night on September 15, 2013, Kendall Green arrived at the Pinkerton home uninvited. *See* ECF No. 26-1 ¶¶ 60, 67. Green came to see Jessica, Pinkerton's wife, who had expressly directed him not to come to the house. *Id.* ¶¶ 39–58. At the time, Green had a blood alcohol content of 0.17 percent, more than twice the legal limit for operating a motor vehicle in Maryland. *Id.* ¶¶ 19–22. After Pinkerton closed the door on Green, Green forced his way into the Pinkerton home, cracking the front door. *Id.* ¶¶ 127–131. One or more persons in the home repeatedly told Green to leave. Green refused. *Id.* ¶¶ 68–72. Green used racial slurs towards Pinkerton, cursed at him, and began to approach him. *Id.* ¶¶ 84–87. Pinkerton told Green to stop, but Green continued to approach Pinkerton. *Id.* ¶¶ 87–90. Pinkerton backed away from Green as he continued to approach him. *Id.* Even after Pinkerton brandished his firearm, Green refused to cease his aggressive behavior and leave the home. *See id.*; *see also* ECF No. 26 at 5.

Under these facts, no reasonable juror could find that Green did not forcibly enter the Pinkerton dwelling, and commit an assault or attack upon the dwelling. The circumstances described created a reasonable apprehension that Green was about to commit a felony upon the house, and inflict serious bodily harm upon Pinkerton or upon other inhabitants of the home. Therefore, Pinkerton acted reasonably in using deadly force to repel the attack, where an intoxicated Green forced his way into Pinkerton's house in the middle of the night, engaged in an altercation with Pinkerton, refused to leave, and continued to approach Pinkerton after several directives to stop. *See Crawford v. State*, 231 Md. 354, 364 (1963) (finding that appellant had met his "burden of proving by a preponderance of the evidence that he acted reasonably in

defense of his habitation against forcible entry" where decedent forced his way into appellant's home seeking to beat and rob appellant). Pinkerton, as lawful occupant of the dwelling, was under no duty to retreat in his own home, and therefore cannot be held liable for acting in reasonable defense of his home. *See Barton v. State*, 46 Md. App. 616, 621 (1980) (finding defendant had no duty to retreat and was acting in self-defense when decedent charged at him with a knife in a dwelling where defendant resided); *cf. Gainer v. State*, 40 Md. App. 382, 384 (1978) (finding that trial court erred in failing to instruct on "castle doctrine" where defendant and decedent had verbal altercation in defendant's home and decedent's "blood alcohol level was .17").

Moreover, under these facts, Pinkerton is afforded civil immunity under Maryland law. Md. Code, Cts. & Jud. Proc. § 5-808 provides civil immunity for persons using force against individuals entering the person's dwelling. It states:

> (b) A person is not liable for damages for a personal injury or death of an individual who enters the person's dwelling or place of business if:
> (1) The person reasonably believes that force or deadly force is necessary to repel an attack by the individual; and
> (2) The amount and nature of the force used by the person is reasonable under the circumstances.

Md. Code, Cts. & Jud. Proc. § 5-808. Accordingly, as the Court reasoned earlier, because Pinkerton reasonably believed that deadly force was necessary to repel Green's attack on his home, his person, and his family — and because the use of this force was reasonable under the totality of the circumstances — Pinkerton is not liable for damages in this action.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 26, is granted, and the Motion to Stay, ECF No. 20, is denied as moot. A separate Order shall issue.

Date: August 18, 2017

GEORGE J. HAZEL
United States District Judge